# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **WSOU Investments, LLC d/b/a Brazos Licensing and Development,**<br><br>    Plaintiff,<br><br>  v.<br><br>**Xilinx, Inc.,**<br><br>    Defendant. | C.A. No. 20-1228-CFC-JLH<br>C.A. No. 20-1229-CFC-JLH<br>C.A. No. 20-1231-CFC-JLH<br>C.A. No. 20-1232-CFC-JLH<br>C.A. No. 20-1233-CFC-JLH |

### PLAINTIFF'S LETTER TO THE HONORABLE JENNIFER L. HALL
### REGARDING PROTECTIVE ORDER DISCOVERY DISPUTE

Dated: September 1, 2021

DEVLIN LAW FIRM LLC
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com
*Attorneys for Plaintiff*

Dear Judge Hall:

Pursuant to Your Honor's Oral Order (D.I. 54 in C.A. No. 20-1228), Plaintiff WSOU Investments, LLC provides its positions on the disputed issues in the proposed protective order ("PPO").[1] The six remaining disputes concern source code (4 issues), export controls (1 issue), and the prosecution bar (1 issue).

A.  **Source Code-Related Disputes**

    1.  **The Court Should Create a Fourth Category of Confidentiality Designation for High-Level Source Code Identifiers** *(PPO ¶¶ 1, 3, 4, and 11(f))*

The parties agree that the protective order should permit *at least* the following confidentiality designations: (i) "CONFIDENTIAL"; (ii) "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"; and (iii) "HIGHLY CONFIDENTIAL – SOURCE CODE." PPO at ¶ 1. This third designation for Source Code material provides the highest level of protection and strictest procedures. *Id.* at § 11. WSOU proposes to create a fourth category for documents that do not contain Xilinx's source code *per se* but merely include high-level identifiers or descriptions related to source code, such as file, function, and variable names. *Id.* at ¶¶ 1, 3, 4, 11(f). This kind of high-level information provides a convenient way of identifying and discussing portions of the source code, without revealing its substance. Such high-level source code identifiers "provide very little, if any, useful—let alone highly confidential—information" and do not "provide the same level of disclosure as would the source code implementation of an algorithm or data structure." *Fintiv, Inc. v. Apple, Inc.*, No. 1:19-cv-01238-ADA, D.I. 131 (W.D. Tex. June 25, 2020), slip op. at 3 (copy attached).

Under Xilinx's proposal, however, high-level identifiers would be deemed "Source Code," which would mean that WSOU's outside counsel and experts would not even be able to write down things like source code file names during their in-person inspection of Xilinx's source code (*see* PPO ¶ 11(f)) or mention source code file names in email correspondence between them for purposes of working and collaborating on this case. Such severe restrictions are unnecessary and would be disruptive to the litigation. Creating a fourth category for high-level identifiers would safeguard their confidentiality while simplifying and providing appropriate flexibility to the litigation by, for example, permitting the parties to refer to these convenient identifiers in electronic submissions (*e.g.*, expert reports, discovery responses, court filings), electronic correspondence, and source code review notes (*see infra*, § A.4). Thus, WSOU's proposed confidentiality designation appropriately balances Xilinx's confidentiality concerns with the needs of the case.

    2.  **"Source Code" Should Not Include "Chip-Level Schematics"** *(PPO ¶ 8)*

Although the parties agree that the highest confidentiality designation for "Source Code" should apply to actual source code (*i.e.*, "a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other

---

[1] As coordinated by the parties, the PPO, which contains the parties' competing language for the disputed provisions, is being submitted with Defendant Xilinx's letter brief.

translator"), they dispute whether it should extend to "chip-level schematics." PPO at ¶ 8. The Court should reject Xilinx's proposal to define "Source Code" to include "chip-level schematics including electronic drawings and symbolic representations that define or depict digital or analog electrical circuits within integrated circuit chips." *Id*. Chip-level schematics are not source code. Unlike source code, which is textual in nature, chip-level schematics are typically large, highly detailed, multicolored diagrams that are not conducive to the paper printing procedure required by ¶ 11(j) of the PPO for actual source code. To provide chip-level schematics on paper in a manner that is sufficiently legible and coherent could require hundreds of additional printed pages beyond what the parties are already disputing in ¶ 11(j). Such voluminous printouts of the schematics would be inconvenient and unwieldy. WSOU submits that chip-level schematics should be produced electronically in a manner that maintains their legibility and clarity.

### 3. 500 Printed Pages of Source Code Per Case Is Reasonable *(PPO ¶ 11(j))*

Given the asserted patents and accused products, WSOU estimates at this early juncture that it may need up to 500 pages of printed source code for each of the five actions to support its infringement case. PPO at ¶ 11(j). Xilinx's proposal of just 100 total pages for all the cases combined is untenable and would undoubtedly lead to discovery disputes. WSOU's proposal is likely to avoid unnecessary disputes and wasting of the parties' and Court's time and resources.

### 4. WSOU's Source Code Reviewers Should Have Flexibility in Taking Handwritten Notes Regarding Xilinx's Source Code *(PPO ¶ 11(f))*¶

Paragraph 11(f) sets forth procedures for source code review, which the parties agree can include taking handwritten notes. WSOU has consented not to copy any actual source code during the review, but requests that its reviewers be granted the flexibility to take notes as they deem appropriate, including by referencing high-level source code identifiers (*supra*, § A.1). Xilinx's proposal, in contrast, would severely limit what WSOU's reviewers could write in their notes, infringing upon WSOU's right to build its case and generate litigation work product as it sees fit.

### B. Xilinx's Proposed "Export Control" Provisions Are Unnecessary *(PPO ¶ 7)*

The Court should reject Xilinx's proposal to include two sentences concerning export controls in ¶ 7. Xilinx's proposed language merely recognizes, as a general matter, that export control laws and regulation exist and that the parties will comply with any that are applicable. Whether laws and regulations exist or may be applicable is true regardless of whether it is so stated in the protective order. During the parties' negotiation of the protective order, WSOU's counsel requested that Xilinx identify any export control material of which it is aware, but Xilinx did not identify anything beyond stating that Xilinx is an international company that has general concerns about export controls. If Xilinx has specific export control concerns, it should expressly notify WSOU, which will of course comply with any applicable laws or regulations.

### C. The Scope of the Prosecution Bar Should Be Tied to the Scope of Potentially Relevant Discovery *(PPO ¶ 12)*

The parties agree that the protective order should impose a prosecution bar, but differ as to its scope. PPO at ¶ 12. WSOU submits that the prosecution bar should be commensurate in

scope with the subject matter at issue this litigation: "the field of the invention of the patents-in-suit." *Id*.  The prosecution bar should be tied to the foreseeable substance of relevant discovery in this action to avoid any risk of its improper use for prosecuting patent applications.

Xilinx, however, seeks an overly expansive prosecution bar of indeterminate scope that would extend to ***any and all*** products that Xilinx has ever designed, developed, or sold, irrespective of whether such products are at issue or the subject of any discovery.  *Id*.  As an initial matter, WSOU has no way of knowing every single product that Xilinx may have designed, developed, or sold at some point in time.  Xilinx's proposal would therefore place WSOU's counsel in an impossible situation of never knowing whether they were complying or violating the protective order.

Moreover, this litigation does not necessitate such a broad scope that extends beyond the field of invention of the patents-in-suit or the specific products at issue in this litigation.[2]  WSOU is not seeking discovery of confidential information concerning irrelevant products.  There is simply no risk that WSOU's counsel could use confidential information to prosecute patent application related to irrelevant products.  Indeed, Xilinx has stipulated to multiple protective orders in this district that contained prosecution bars nowhere near as expansive as what Xilinx seeks here.  *See, e.g., FG SRC LLC v. Xilinx, Inc.*, No. 20-601-LPS (D. Del.), D.I. 53 at ¶ 9.1 (limited in scope to "the Relevant Technology or the Patent-in-Suit"); *Arbor Global Strategies LLC v. Xilinx, Inc.*, No. 19-1986-MN (D. Del.), D.I. 60 at ¶ 8.1 (limited in scope to "manufacture of stacked integrated circuits including programmable arrays and using through silicon vias (TSVs)"); *Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-2225-RGA (D. Del.), D.I. 52 at ¶ 46 (limited in scope to "analog-to-digital converter technology or SerDes technology disclosed in the [confidential discovery material] that the individual reviewed or accessed, not including information that is publicly available at the time of prosecution").

\* \* \* \*

We respectfully request that the Court endorse WSOU's proposed language in the PPO, and look forward to discussing the disputed issues with Your Honor on September 3.

Respectfully submitted,

*/s/ James M. Lennon*
James M. Lennon (No. 4570)

*Attorneys for Plaintiff WSOU Investments, LLC*

Enclosure
cc:  Clerk of the Court (via CM/ECF, w/encl.)
     All Counsel of Record (via CM/ECF, w/encl.)

---

[2] In negotiating the protective order, WSOU offered to extend the prosecution bar to the field of technology of the patents-in-suit *and the accused products*, but Xilinx rejected the offer without explanation and maintained its demand for a prosecution bar covering any and all products that Xilinx ever designed, developed, or sold, regardless of their relevance to this litigation.