

WILMINGTON
RODNEY SQUARE

NEW YORK
ROCKEFELLER CENTER

**Anne Shea Gaza**
P 302.571.6727
F 302.576.3439
agaza@ycst.com

September 1, 2021

<u>**VIA CM/ECF**</u>

The Honorable Jennifer L. Hall
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:   *WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Xilinx, Inc.*, C.A. Nos. 20-1228-CFC-JLH; 20-1229-CFC-JLH; 20-1231-CFC-JLH; 20-1232-CFC-JLH; 20-1223-CFC-JLH

Dear Magistrate Judge Hall:

    Xilinx, Inc. ("Xilinx") and WSOU Investments, LLC ("WSOU") were not able to reach agreement on the following provisions in the Proposed Protective Order (Exhibit A): (1) Source Code, (2) Prosecution Bar, and (3) Export Control. A chart mapping the disputed issues to the applicable paragraphs within the Proposed Protective Order is enclosed. (Exhibit B).

1. **Source Code**

    The Source Code issues in dispute are: (a) the inclusion of chip-level schematics within the definition of Source Code; (b) the need for a separate confidentiality designation for notes taken during Source Code review; and (c) the number of Source Code pages that may be printed.

    a.  Definition of Source Code (Ex. A, ¶ 8)

    WSOU has accused certain functionality in Xilinx's Field Programmable Gate Array (FPGA) products. An FPGA is a semiconductor device that is based around a matrix of configurable logic blocks connected via programmable interconnects. Xilinx's chip-level schematics for its FPGAs provide sensitive details on the electrical circuit design. Xilinx treats the confidentiality of these chip-level schematics in the same manner as the other information that falls within the agreed definition of Source Code. Accordingly, Xilinx requests that the Source Code definition include "chip-level schematics including electronic drawings and symbolic representations that define or depict digital or analog electrical circuits within integrated circuit chips." This request is consistent with other protective orders entered by courts in this District. *See, e.g.,* Ex. C, *Analog Devices, Inc. v. Xilinx, Inc.*, C.A. No.19-2225-RGA, D.I. 52 at ¶ 21 (D. Del. Apr. 13, 2020); Ex. D, *Sound View Innovations, LLC v. Facebook, Inc.*, C.A. No. 16-116-RGA, D.I. 36 at ¶ 2.8 (D. Del. Jul. 11, 2016); Ex. E, *Mellanox Tech., Inc. v. Infinite Data*, C.A. No. 13-259-RGA, D.I. 34 at ¶ 11(a) (D. Del. Apr. 3, 2014).

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P 302.571.6600   F 302.571.1253   YoungConaway.com

Young Conaway Stargatt & Taylor, LLP
The Honorable Jennifer L. Hall
September 1, 2021
Page 2

      b.   Secondary Source Code Designation (Ex. A, ¶ 11(f); *also* ¶¶ 1, 3, 4, 16, 22, 29)

Xilinx objects to WSOU's secondary designation for Source Code: "HIGHLY CONFIDENTIAL – CONTAINS SOURCE CODE FILE NAMES, FUNCTION NAMES, VARIABLE NAMES, AND/OR DESCRIPTIONS" ("SC Notes"). This designation would only apply to handwritten notes taken during review of the Source Code. The parties' dispute is two-fold: (1) the type of notes that can be taken during review of the Source Code; and (2) the confidentiality protection for those notes. WSOU's proposal would allow it to take unlimited notes during review of the Source Code, and those notes would not have any confidentiality protections under the Protective Order. This proposal not only circumvents the special protections given to Source Code, but also puts Xilinx's highly confidential information at risk.

First, if there is no limit on the content of handwritten notes, a person reviewing Source Code would have the ability to copy the Source Code (or significant portions) to its notebook. To protect against this scenario, Xilinx proposes that handwritten notes be limited to identification of the portions of the Source Code a receiving party requests be printed and produced. WSOU, on the other hand, proposes that it be permitted to copy "Source Code file names, function names, or variable names."

Second, under WSOU's proposal, the handwritten notes would not be afforded any type of confidentiality protection. The end result would be that the SC Notes designation would effectively allow WSOU to take information derived directly from the Source Code, make it available to persons who are not subject to the Protective Order, and strip the Source Code material in the notes of their confidentiality protections. This is not a concern for WSOU who indicated in its Rule 26 Initial Disclosures that it does not anticipate producing any of its own confidential technical documents and/or Source Code. But, it is a concern for Xilinx, an operating company in a highly innovative and competitive industry, and, who like other operating companies, is often the target of non-practicing entities.

Finally, WSOU has filed patent cases against 18 other defendants. In those WSOU cases in which a protective order has been entered, its proposed SC Notes designation is not used, confirming that such a designation is not necessary. *See, e.g.*, Ex. F, *WSOU v. Microsoft Corp.*, 6:20-cv-00454-ADA, D.I. 71 at ¶ 1 (W.D. Tex. Mar. 30, 2021); Ex. G, *WSOU v. Arista Networks, Inc.*, 6:20-cv-01083-ADA, D.I. 27 at ¶ 3 (W.D. Tex. June 29, 2021); Ex. H, *WSOU v. ZTE Corp.*, 6:20-cv-00487-ADA, D.I. 83 at ¶ 1 (W.D. Tex. June 1, 2021).

      c.   Printed Copies of Source Code (Ex. A, ¶ 11(j))

This dispute is centered on the number of pages of Source Code that can be printed. Xilinx proposes a printing limitation of 100 pages for all of the above-captioned cases. WSOU proposes a printing limitation of 2,500 pages for all of the above-captioned cases (*e.g.*, 500 pages for each of the five (5) cases).

Xilinx's proposal is consistent with page limitations in this District, which are often limited to one hundred (100) to two hundred (200) pages. *See, e.g.*, Ex. C, at ¶ 40 (limiting paper copies of Source Code to 200 pages for the Plaintiff and 100 pages for the Defendant). It is also consistent with the "reasonable" printing limitation adopted in other WSOU cases. Ex. G, at ¶ 11(h); Ex. H, at ¶ 11(h).

WSOU's proposal, on the other hand, is not reasonable nor is it grounded in facts related to the products accused of infringement. WSOU will likely attempt to support its position based

Young Conaway Stargatt & Taylor, LLP
The Honorable Jennifer L. Hall
September 1, 2021
Page 3

on a protective order entered in its cases against Microsoft pending in the Western District of Texas. However, the Microsoft cases can be distinguished because the accused Microsoft products were multiple versions of software, there were no technical documents produced other than the Source Code, and WSOU's experts had determined, after months of reviewing the Source Code, that they needed to print 1000 pages per software release. Ex. I, *WSOU v. Microsoft Corp.*, 6:20-cv-00454-ADA, D.I. 68 at 2-4 (W.D. Tex. Mar. 29, 2021). Here, software is not the accused product, Xilinx will be producing confidential technical documents in addition to Source Code, and WSOU has not yet reviewed the Source Code to determine if it needs the 100 pages Xilinx proposes much less the 2,500 pages it currently seeks. And, if more than 100 pages is needed, then the Proposed Protective Order allows WSOU to modify the number of pages by agreement or Court Order.

2. **Prosecution Bar Scope (Ex. A, ¶ 12)**

This dispute relates to the scope of the prosecution bar. Xilinx proposes that the prosecution bar apply to "the products designed, developed, or sold by the other Party," while WSOU proposes the bar apply to the "field of invention of the patents-in-suit."

The issue is that the "field of invention of the patents-in-suit" is equipment for telecommunications networks, while the accused Xilinx products are semiconductor devices. The end result is that WSOU will have access to highly confidential information for products that are not in the field of telecommunication network equipment. And, if WSOU's proposal is adopted, WSOU will be able to use Xilinx's information as a roadmap for prosecuting patents to read on Xilinx's FPGAs since FPGAs are not telecommunication network equipment. In other words, the very purpose of the prosecution bar would be circumvented under WSOU's proposal. On the other hand, Xilinx's proposal—"products designed, developed or sold by the other Party"—will provide Xilinx the protection that is intended with a prosecution bar. It will prevent Xilinx's confidential information from being used by WSOU or its counsel to draft patents to read on the Xilinx FPGAs.

3. **Export Control Provisions (Ex. A, ¶ 7)**

As a global corporation, Xilinx is subject to laws and regulations relating to the export of technical data. Xilinx's proposed provision is standard in protective orders. *See*, Ex. F, *WSOU v. Microsoft Corp.*, 6:20-cv-00454-ADA, D.I. 71 at ¶ 7 (W.D. Tex. Mar. 30, 2021).

**Conclusion**

Xilinx respectfully requests that the Court adopt its proposals with respect to the disputed Protective Order provisions. Should Your Honor have any questions or concerns regarding the foregoing or the enclosures, counsel for Xilinx are available at the Court's convenience.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Enclosures

cc: Clerk of the Court (by hand delivery)
All Counsel of Record (by CM/ECF and E-mail)